IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN LESLIE FRANK | : | |
|          Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 14-1121 |
| | : | |
| ALLSTATE INSURANCE COMPANY, et al., | : | |
|          Defendants. | : | |

**McHugh, J.**                                                                                                    July 15, 2014

### MEMORANDUM

This civil action raises claims of employment discrimination. Plaintiff is a 59-year-old female attorney who worked for defendant Allstate Insurance Company for close to 24 years. According to her complaint, she had a stellar employment record until she began to receive unfounded criticism from a new managing attorney in 2011. In October, 2012, plaintiff was confronted by Allstate's security department in connection with her use of Allstate's postage meter for personal reasons, which was claimed to be a violation of Allstate's Code of Ethics. The amount of usage in question was $9.55. Plaintiff was ultimately terminated for "dishonesty" in the nature of embezzlement. She does not dispute that she used that amount of postage. However, she contends that the reason offered for her termination was inconsistent with Allstate's internal policies and procedures and a pretext for discrimination. An initial Motion to Dismiss led to an Amended Complaint, and defendants now return with a Motion to Dismiss Counts Five and Six of the Complaint.

First, defendants seek to dismiss plaintiff's state law claim for breach of contract, arguing that Ms. Frank was an at-will employee who had no contractual rights preventing her termination. They further contend that her state law claims are preempted in that they are

subsumed within the claims plaintiff makes under various discrimination laws. Second, defendants contend that Frank's claims of defamation must be dismissed because Pennsylvania employers have an absolute privilege to communicate honestly with employees about the reasons for termination. Having reviewed the record and having heard oral argument from counsel, defendants' motion with respect to the contract claims is denied, and their motion with respect to the defamation claim is granted.

### A. State Law Contractual Claims

The first issue presented by Defendant's motion is fact-specific. Plaintiff was hired by Allstate in 1989 and given an Employee Handbook published the year before entitled: *"This is Allstate—Where Commitment is a Way of Life."* The Handbook contained a section entitled "Review" which states in relevant part: "either you or Allstate may terminate the employer-employee relationship at any time; however, Allstate will not terminate your employment for unsatisfactory work unless you have been advised that your performance/behavior is below acceptable standards and that your job is in jeopardy. Before performance deteriorates, we make every effort to help resolve the problem." Plaintiff contends that if permitted to conduct discovery, she expects to prove the type of handbook-based agreement formed an implied contract. *See Martin v. Capital Cities Media, Inc.,* 511 A.2d 830, 841 (Pa. Super. 1986), *allocatur denied*, 523 A.2d 1132 (Pa. 1987) (indicating an employee handbook can form an implied contract that replaces an employee's pre-existing at-will status if the handbook "evidences an intent that it becomes a legally binding contract").

Ms. Frank buttresses this argument with the contention that when she was hired by Allstate, she made a promise of faithful service to the company, which she maintained for 24 years. She characterizes her service as sufficient consideration to give rise to an implied contract.

Plaintiff further argues that Allstate failed to follow its own rules regarding use of company property. She was fired for her purported theft of a company resource, but was allowed to continue practicing law for five weeks after Allstate first learned of her personal use of the postage meter. There was no written or explicit policy that governed such conduct, and in Allstate's Code of Ethics, 2012 edition, page 38, there was an allowance for personal use of company resources, so long as it was "infrequent and incidental."

In response, defendants argue that the language forming the basis for the contractual claim is at best equivocal, and that in subsequent editions of the Employee Handbook, there was more explicit language disclaiming any intent on Allstate's part to give rise to a contract of employment. Defendants cite to substantial precedent from both Pennsylvania and federal courts emphasizing the exceedingly narrow scope of any exceptions to Pennsylvania's employment at-will doctrine. *E.g. Weaver v. Harper*, 975 A.2d 555 (Pa. 2009); *Richardson v. Charles Cole Meml. Hosp.*, 466 A.2d 1084 (Pa. Super. 1983); *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654 (3d Cir. 1990). Finally, defendants argue that even if a contract existed, it did not confer life tenure.

The summary above does not address the many subtleties and nuances in counsel's respective arguments, but sets forth their positions in broad terms. The defense is correct that Ms. Frank faces significant challenges with respect to her contract claims. However, I find three aspects of plaintiff's position noteworthy. First, there is language in the Employee Handbook that could reasonably be interpreted to provide an employee with notice and a chance to correct any deficiency before termination. Second, the disclaimer in the 1988 Handbook is equivocal, and to the extent that it is present, seemingly modified by reference to a "second chance" before termination. Third, the qualifying statements in Allstate's Code of Ethics, defining what

constitutes misuse of company resources, when coupled with the language of the Employee Handbook, gives the plaintiff here a more tenable foothold than exists in many of the reported cases where contractual claims were dismissed early in the litigation.

I reject defendants' contention that the state law contractual claims merely restate plaintiff's discrimination claims in different form. Rather, I interpret the Amended Complaint as setting forth a distinct, alternative theory of liability. Although it is true that there might be some logical inconsistency between plaintiff's breach of contract claim and her claims of intentional discrimination, she is not required to choose between competing theories of liability at this stage of the litigation. *See* Fed. R. Civ. P. 8(d).

In reaching this result, I am mindful of the admonition given by the Court of Appeals that where there is a factual dispute as to the existence of an employment contract, district courts hesitate to dismiss without permitting discovery. *E.g., Novosel v. Nationwide Ins. Co.*, 721 F.2d 894 (3d Cir. 1983); *Wolk v. Saks Fifth Avenue Inc.*, 728 F.2d 221 (3d Cir. 1984).

In sum, although plaintiff needs to climb a daunting mountain of adverse precedent in order to prevail with her contract claims, at this juncture I am persuaded that she has earned the right to set up a base camp from which to attempt the ascent.

### B. State Law Defamation Claims

The second prong of defendants' motion presents a pure issue of law. The reason for plaintiff's termination was never communicated to her in writing, but she was told verbally that it was for "dishonesty" in connection with her use of Allstate's postage meter. Allstate opposed her application for unemployment benefits on the basis of misconduct. Plaintiff concedes that any statements made to the Pennsylvania Unemployment Compensation Bureau, or other state agencies conducting quasi-judicial proceedings, are protected by an absolute privilege, and will

not give rise to damages for defamation. There is no suggestion that Allstate communicated the reasons for plaintiff's dismissal to any third party, and publication of a defamatory statement is by statute in Pennsylvania a required element of the tort of defamation. *See* 42 Pa. Con. Stat. Ann. §8343(a)(2). To meet her burden of proving publication, plaintiff directs the court's attention to the realities of the job-seeking process, and the fact that in connection with her attempts to secure employment, she must necessarily reveal why, after nearly 24 years, she was terminated by Allstate, even though she contests the reasons for her termination. Courts in some jurisdictions, recognizing that a plaintiff under these circumstances is effectively forced to repeat the defamation while interviewing for jobs, recognize the concept of "compelled self-publication" as one avenue for meeting the legal requirement. *See e.g., McKinley v. Cnty. of Santa Clara*, 110 Cal. App 3d 787, 798, 168 Cal Rptr 89, 94 (1980); *Colonial Stores Inc. v. Barrett*, 73 Ga. App 839, 840-841, 38 S.E.2d 306, 308 (Ga. Ct. App.1946); *Lewis v. Equitable Life Assurance Soc'y of the United States*, 389 N.W. 2d 876, 888 (Minn. 1986). Citing to that doctrine, plaintiff here asks the court to accept every instance where she discussed her firing as a separate occurrence of defamation.

There is only one appellate case in Pennsylvania that addresses the doctrine of "compelled self-publication." *Yetter v. Ward Trucking Corp.*, 585 A.2d 1022 (Pa. Super. 1991).[1] In *Yetter*, plaintiff was discharged from his job for reasons that were defamatory in nature. His employer had not communicated those reasons to anyone other than the plaintiff, but he argued that he was effectively forced to repeat the defamation each time he applied for a new position. The Court declined to adopt "compelled self-publication" as the law of Pennsylvania, concluding

---

[1] Federal courts sitting in diversity should give appropriate deference to the decisions of intermediate appellate courts pending a definitive ruling from a state Supreme Court. *U.S. Underwriters Insurance Company v. Liberty Mutual Insurance Co.*, 80 F.3d 90 (3d Cir. 1996).

that to do so would undermine what has been held to be an absolute privilege on the part of employers to communicate plainly the reasons for dismissal to an employee. *Id.* at 1025.

The Superior Court's decision in *Yetter* would seem to definitively exclude "self-compelled publication" as an avenue for plaintiff here, except that immediately following its specific holding the Court added this cryptic statement:

> We express no view as to whether under a different set of circumstances, compelled self-publication of the defamatory material by the defamed person, rather than by the defendant to a third-party, will suffice. *Id.*

Seizing upon this statement, plaintiff argues that her case represents the kind of exception to the rule that the Superior Court meant to hold open in *Yetter*. Her argument is grounded in the fiduciary nature of the attorney-client relationship and a lawyer's duty of candor. As an example, plaintiff cites to former Disciplinary Rule 1-102(A)(4), which provided: "A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation."[2] In plaintiff's view, the unique professional obligations of the legal profession require recognition of compelled self-publication in employment claims brought by attorneys.

The problem with plaintiff's argument is that it proves too much. If such an exception is recognized for attorneys, then why not brokers or accountants? And the importance of honest dealing extends well beyond professionals. When a valet at a parking lot takes a car for safekeeping, is not honesty an essential requirement of the job? When a personal care attendant is being hired as live-in help for a senior citizen, the patient's children certainly care about the issue of character. In actuality, honesty and forthrightness are critical elements of *every* employment relationship, and therefore an appropriate subject for discussion during the interview process. Although plaintiff is correct that failure to be candid with prospective

---

[2] In Pennsylvania, the Code was replaced by the Rules of Professional Conduct, effective October 16, 1987. For purposes of plaintiff's argument, the Court will acknowledge that similar values are expressed by the current Rules.

employers about her history with Allstate would be poorly received and likely fatal to her chances of obtaining, or subsequently retaining, employment, the same would be true as to virtually any job applicant who misrepresented the terms of departure from their last job. Given the stated policy rationale of the Superior Court in *Yetter*, namely, the importance of the absolute privilege Pennsylvania employers have to be candid with terminated employees, *Sobel v. Winegard*, 531 A.2d 520, 522 (Pa. Super. 1987); *Agriss v. Roadway Express, Inc.* 483 A.2d 456 (Pa. Super. 1984), I am convinced that the statement in the opinion on which plaintiff relies was meant only to communicate the willingness of the Superior Court to consider adoption of the rule of compelled self-publication **outside** the context of employment cases.

Since *Yetter*, no court applying Pennsylvania law has endorsed the principle in an employment case, and numerous decisions have rejected it. *See Byars v. Sch. Dist. of Phila.*, 942 F. Supp. 2d 552 (E.D. Pa. 2013); *Pilkington v. CGU Ins. Co., Inc.*, 2000 W.L. 33159253 (E.D. Pa. 2001); *Walker v. IMS Amer., Ltd.*, 1994 W.L. 719611 (E.D. Pa. 1994). Of particular note is *Mollick v. Beverly Enterprises-Pa. Inc.*, 1997 W.L. 634496 (E.D. Pa. 1997). There, plaintiff was also a professional, specifically a registered nurse, who argued that the code of conduct applicable to her practice ethically required her to disclose defamatory reasons given by her employer for discharging her when she was interviewing for future positions. Judge Van Antwerpen, now on the Third Circuit Court of Appeals, while recognizing the "difficult situation" in which the plaintiff was placed, nonetheless concluded that the claim was barred by the rule adopted in *Yetter*.

In a case where a discharged employee is ultimately proven correct, and was in fact defamed by false accusations made in connection with a firing, there is undeniably an inherent unfairness in having been forced to repeat the defamation during the search for employment.

However, matters of privilege typically involve a trade-off between competing values. With evidentiary privileges, relevant information is withheld to serve the greater good of preserving confidential relationships or marital harmony. With executive privilege, information that would otherwise properly be the subject of public disclosure and debate is withheld to preserve unfettered decision-making. In the context of this case, Pennsylvania deems the goals of transparency and candor more important than allowing a remedy for an aggrieved employee. That balance, struck by Pennsylvania's Superior Court as a matter of policy, is not one that a federal district court should disturb, absent some indicia that its Supreme Court would rule differently.

In conclusion, I see no indication that Pennsylvania would apply principles of "compelled self–publication" in an employment case. Therefore, I grant the Motion to Dismiss in defendants' favor as to all of the defamation claims set forth in Count Six of the Amended Complaint. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Court Judge